STATE OF IOWA, Appellee, v. ROSS PARDOE, Appellant.

**BURGLARY**: Instructions—Failure to Instruct as to Undisputed Fact.
1   The failure, in the trial of a charge of burglary, to instruct that
    the State must prove that the goods in the building were kept for
    "use, sale, and deposit," is quite harmless when the evidence undis-
    putably established said fact.

**CRIMINAL LAW**: Evidence—Attempted Escape—Instructions. Evi-
2   dence tending to show an escape by a defendant after his arrest
    need not, in the absence of a request, be specifically limited by the
    instructions, to the claim that it indicated the guilt of the accused.

**CRIMINAL LAW**: Evidence—Confessions—Admissibility. Written
3   confessions are admissible when the testimony is in conflict on the
    issue whether they were voluntary.

**CRIMINAL LAW**: Evidence—Alibi—Credibility. The credibility of
4   witnesses who testify in support of an alibi is for the jury.

**BURGLARY**: Possession and Control of Building—Variance. An alle-
5   gation, in an indictment for burglary, that a building was in the
    "possession and control" of a named person, with proof of such
    fact, together with proof that another person was interested in the
    business, presents no fatal variance.

Headnote 1: 17 C. J. p. 350. Headnote 2: 16 C. J. p. 1059. Head-
note 3: 16 C. J. p. 735. Headnote 4: 16 C. J. p. 930. Headnote 5:
9 C. J. p. 1062 (Anno.)

*Appeal from Hamilton District Court.*—SHERWOOD A. CLOCK,
Judge.

DECEMBER 11, 1924.

REHEARING DENIED MARCH 19, 1925.

DEFENDANT was indicted, tried, and convicted of the crime
of breaking and entering. Judgment was entered under the
statute, committing him to the state reformatory at Anamosa for
an indeterminate period not exceeding ten years. Defendant
appeals.—*Affirmed.*

*Martin & Alexander,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *E. P. Prince,* County Attorney, for appellee.

ARTHUR, C. J.—I.   The building which it is charged defendant broke and entered, was a store building, located in the country, near the village of Homer, in Hamilton County.   In said building was kept for sale merchandise, consisting of a general line of groceries, including canned goods, potatoes, and eggs; also, clothing, shoes, and rubber boots, etc.   Defendant's parents operated ''The Home Hotel'' in the town of Duncombe, Webster County, Iowa.   Defendant and his two brothers, Percy Pardoe and Paul Pardoe, who were jointly indicted with defendant, Ross Pardoe, lived with their parents at said hotel.   The town of Duncombe is about twelve miles from the town of Homer.

The State offered testimony tending to show that Andrew S. Showers was in possession of the store building and stock of goods contained therein, and had control of and was conducting the business of said store; that, on the evening before the store was robbed, Showers locked the building and went to his home, about a quarter of a mile from the store; that he learned of the robbery about 4 o'clock the next morning, and immediately went to the store; that he found that a quantity of overalls, shirts, women's dresses, a case of eggs, two bushels of potatoes, two gunny sacks of canned goods, and four pairs of rubber boots had been taken; that defendant, Ross Pardoe, and his two brothers, were seen by C. H. Hill, a witness for the State, carrying merchandise from the store building and loading it into an automobile standing by the store building; that Hill notified Showers of what he had seen, and they started in search of the burglars; that Hill knew and recognized the defendant and his brothers.   Only defendant, Ross Pardoe, was on trial in this case.

The evidence offered by the State also tends to show that part of the goods that had been taken from the store were found concealed in bushes by the roadside; that Hill, Showers, and a man named Rusher concealed themselves near where the property was hidden, to watch for the return of the parties to the

spot; that, about eight hours after the robbery, defendant and his brothers were seen by the watchers to come to the place where the goods were concealed; that they became alarmed at some noise made by the watching parties, and threw some of the merchandise, including several pairs of boots, into the car, and started away; that they were ordered to halt, and shots were fired at them, but they made their escape; that a shot fired broke the wind shield of the Pardoe car; that the escaping parties threw out of their car along the road three pairs of gum boots and some boxes of merchandise; that, about 5 o'clock in the morning after the robbery, Ross Pardoe and one of his brothers arrived at the home of Michaelson, about two miles south of Duncombe; that Ross asked Michaelson to take him and his brother a distance of two or three miles north of the Michaelson place; that Ross said they were in a hurry; that Ross and his brother acted scared and nervous; that Michaelson took the men in his car about two miles to the Hanrahan schoolhouse, where he told them that he was out of gas, and defendant and his brother left the car; that, shortly after defendant and his brother left Michaelson, about 8 o'clock in the morning, defendant and his brother were found north of Duncombe, and were arrested; that, when they saw the officers approaching, each threw a revolver into the grass by the roadside; that they were taken to Fort Dodge and lodged in jail, and there told, in the presence of several parties, about breaking into the Showers store, and how it was done; that a voluntary confession was made by defendant, Ross Pardoe, orally, and his statement was reduced to writing, and was signed by him. This statement is known in the record as "Exhibit 1." Evidence was also introduced by the State, tending to show that, in his talk with the officers before he made the written confession, defendant said that he and his brothers had broken into the Showers store; that they had stolen rubber boots, canned goods, and a case of eggs, which they had planned to leave along a road, and return for them; and that, when they went back to get the goods, they heard a noise, and were shot at, the shot breaking the wind shield of their car; that they abandoned the car, after something went wrong with it, and got a man to drive them to Duncombe. The written confession recites the same facts. Defendant was

arraigned, and committed to jail. He broke jail, and was apprehended and returned to jail.

Defendant was a witness in his own behalf, and denied being at the store building; denied breaking and entering the store; admitted that he signed "Exhibit 1," the confession, but claimed that it was obtained by threats and duress. Defendant also claimed an alibi, which will be later considered.

At the close of the State's evidence, defendant moved for a directed verdict in his favor, the principal grounds of which were that there was fatal variance between the charge in the indictment and the proof, in that the ownership or possession of the property where the breaking and entering were alleged to have been committed, was, in the indictment, alleged to be in Andrew S. Showers, and that the evidence showed the possession and control of the store to be in Mrs. Showers; that the alibi was established by such overwhelming evidence as to show reasonable doubt of defendant's guilt, as a matter of law. The motion was not sustained, and was renewed at the close of all the evidence, and then overruled.

II.   Errors assigned and relied upon for reversal are:

(1)   Error in certain instructions, and omitting to instruct on certain propositions.

(2)   Admission of "Exhibit 1," the claimed confession, in evidence.

(3)   Overruling motion to direct verdict.

(4)   The possession of the property at which the alleged burglary was committed was in a person different from what the evidence shows the property was in possession and control of.

(5)   The evidence was insufficient to support the verdict.

III.   Complaint is made that, in stating the issues, the instructions omitted to specifically state that the State must prove the allegation of the indictment that the "goods, wares and merchandise and valuable things" alleged to have been kept in the building, "were then and there kept by said Andrew S. Showers for use, sale, and deposit." This criticism is not well founded. It is without dispute in the record that the store building and the stock of merchandise in it at the time of the breaking and entering were in the possession and control of Mr.

1. BURGLARY: instructions: failure to instruct as to undisputed fact.

Showers; and that the merchandise in the store was kept by Showers for the purpose of selling same. As to the merchandise in the store at the time of the burglary, Showers testified—and it was not disputed:

"They were my goods. I paid for all the goods that were brought into that store."

The indictment itself was set forth in the instructions. It was not necessary to specifically instruct that it must be found, to convict, that the merchandise alleged to have been kept in the store was kept by Showers for the purpose of sale, when it appeared, without dispute, that the merchandise was kept by Showers for that purpose. No prejudice could possibly result to appellant on account of the court's omission to specifically instruct on said matter. *State v. Fortune,* 196 Iowa 995.

IV. The State introduced evidence to show that, after defendant was arrested on the charge in this case and placed in jail, he broke out of jail, escaped, and fled. The evidence of escape from jail and flight was offered as a circumstance indicative of guilt, and the court properly instructed on that proposition. Appellant concedes that the evidence was admissible for the purpose of showing flight, but seems to complain that, because breaking jail is of itself a crime, the court should have given the jury an instruction limiting the evidence to the purpose of showing flight. The criticism is without merit. The court fully and properly instructed on the proposition in Instruction 12, to which no exception was taken. No instruction was requested on this proposition.

*2. CRIMINAL LAW: evidence: attempted escape: instructions.*

V. Appellant complains of the admission in evidence of "Exhibit 1," the signed confession, on the ground that the same was not shown to have been voluntary, but was obtained by duress, threats, and compulsion. Several persons, present at the time the confession was signed, testified that appellant told the story recited in "Exhibit 1," willingly, and that he was not threatened by anyone, and no coercion or promises were used. Defendant, as a witness for himself, furnishes the only evidence that there was any coercion. His testimony made a conflict in the evidence as to whether the written statement was voluntarily made or not.

*3. CRIMINAL LAW: evidence: confessions: admissibility.*

Under that situation, it was proper for the court to submit to the jury the question as to whether or not the alleged confession was obtained wrongfully,—which was done. *State v. Storms,* 113 Iowa 385; *State v. Westcott,* 130 Iowa 1; *State v. Von Kutzleben,* 136 Iowa 89; *State v. Foster,* 136 Iowa 527.

There was no error at this point.

VI.   Counsel for appellant insist that the evidence offered by appellant in support of his claimed alibi was so strong and overwhelming that, as a matter of law, it generated a reasonable

4. CRIMINAL LAW: evidence: alibi: credibility.

doubt as to appellant's guilt, and that it was error to refuse a directed verdict, and to overrule motions in arrest of judgment and for a new trial.   No complaint is made of the instruction submitting to the jury the issue of alibi.   The instruction was correct, clear, and ample.   It was the province of the jury to pass upon the credibility of the witnesses who testified in support of the claimed alibi.   Evidently the jury did not believe the testimony of appellant's witnesses on that issue.

VII.   The indictment alleged the possession and control of the store building broken into, to be in Andrew S. Showers.   Appellant contends that the evidence shows that the building was

5. BURGLARY: possession and control of building: variance.

in the possession of Mrs. Showers, and that it was error to overrule his motion for a directed verdict, and motions in arrest and for a new trial.   It is without dispute in the record that the store building, at the time of the burglary, was in the possession and control of Andrew S. Showers.   Neither Showers nor his wife owned the building.   True, it developed on cross-examination of Showers that his wife was interested in the business; but she was not conducting the business, and did not have possession and control of the building.   The store was located in the country, and was known as the "Showers Store."   There could have been no question or confusion in the mind of defendant or anyone concerning the identity of the building that it is alleged defendant broke and entered.   *State v. Fortune,* supra.   There was no error at this point.

We have carefully examined the whole record, and find no error prejudicial to a fair trial of defendant. The judgment of the trial court is affirmed.—*Affirmed.*

PRESTON, STEVENS, and VERMILION, JJ., concur.