**STATE of Iowa, Appellee,**

v.

**Frank PROPPS, Appellant.**

**No. 54538.**

Supreme Court of Iowa.

Sept. 27, 1971.

worth $240 had been stolen from a granary located on his farm west of Mitchellville.

David Greene, a witness for the State, testified while hunting rabbits early in January he noticed soybeans in a farm bin near Mitchellville. Later at his place of employment, defendant's used car lot, Greene noticed soybeans on the garage floor, asked defendant how much he was getting for beans, and was told $125. Greene advised defendant he knew where to get a load. Defendant suggested they go out and look the situation over. The two men left in one of defendant's used cars to see how easy it would be to get the beans. They were then unable to locate the bin to which Greene had previously alluded.

Shortly before midnight January 20, 1970, Greene went to defendant's home. Some sort of party was under way at the house and Greene talked with defendant's stepson, James Colbert, for about an hour. The two concluded they would "get" the soybeans that night. Greene asked defendant for use of his truck to "jump start" his own car which was stalled nearby. James Colbert obtained the truck keys from defendant.

Henry T. McKnight, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., James W. Hughes, Michael J. Laughlin and G. Douglas Essey, Asst. Attys. Gen., and Ray Fenton, County Atty., for appellee.

RAWLINGS, Justice.

Charged with larceny in the nighttime, defendant entered a not guilty plea. Trial jury found him guilty. Sentence was accordingly entered. From denial of motion in arrest of judgment, and for new trial, he appeals. We affirm.

Trial testimony of Hugh Webb discloses the morning of January 21, 1970, he discovered about 100 bushels of soybeans

Greene and Colbert then took the truck and picked up a third party, Richard Scott. About 2:00 A.M., January 21, 1970, the three drove to where the beans were located, loaded the truck, using shovels and sacks which were on it, then drove to Des Moines. The same morning at approximately 5:00 A.M., Greene, Colbert and Scott were attempting to "jump start" Greene's car by use of the truck, still loaded with the stolen beans. Defendant appeared at the scene and directed the truck be taken to defendant's place of business. That being done, the truck was there driven into the garage, and an overhead door closed. Greene stated the truck was not damaged while being used as aforesaid. Defendant gave Greene $20, Colbert $20, and Scott $15.

Virgil Wagner, defendant's brother-in-law, was called as a witness for the State. His testimony is that about 8:00 or 9:00 A. M., January 21, 1970, he was asked by defendant to sell some grain for him. About 1:30 P.M. the same day Wagner, accompanied by defendant, drove the soybean filled truck to the Altoona Elevator where the beans were sold. Wagner received a $171 check payable to him. It was cashed and the proceeds delivered to defendant who kept $148, giving $23 to Wagner.

Defendant Propps' testimony on his own behalf is, he loaned the truck only for the purpose of enabling Greene to "jump start" his car; directed it be returned within half an hour; was later told the beans were given to Greene by his uncle, defendant was allergic to beans so arranged for Wagner to sell them; the truck was damaged while in possession of Colbert and Greene so defendant kept part of the sale proceeds to cover cost of repairs, giving the remainder to Colbert, Greene and Scott; and he knew nothing of the theft at any of these times.

At close of the evidence defendant moved for a directed verdict. It was overruled.

Trial court submitted to the jury two forms of verdicts and three defendant-requested special interrogatories.

On appeal defendant contends, trial court erred in entering judgment and overruling his post-trial motions because there was, (1) insufficient evidence to convict; (2) absence of essential corroborative evidence; (3) a fatal inconsistency in answers to the special interrogatories themselves, also in answers to the special interrogatories and the general verdict.

■ I. Under relatively recent pronouncements by this court regarding sufficiency of evidence to support the conviction we find no merit in defendant's first assignment. See State v. Kittelson, 164 N.W.2d 157, 161–164 (Iowa); State v. Myers, 158 N.W.2d 717, 719 (Iowa); State v. Horrell, 260 Iowa 945, 151 N.W.2d 526;

State v. Dwinells, 259 Iowa 945, 951, 146 N.W.2d 231, 235–236.

■ II. Neither is there substance in defendant's claim to the effect Greene's testimony, he being an accomplice, is devoid of essential corroboration.

Unquestionably defendant loaned his truck, with scoop and sacks in it, to Greene and Colbert; that truck, loaded with the recently stolen beans, was soon returned to defendant pursuant to his directions; defendant promptly arranged for and effected a surreptitious sale of the grain; defendant received and divided, or arranged for division, of the proceeds between himself, Wagner, Greene, Colbert, and Scott.

These cases support our conclusion on this issue: State v. Cornwell, 189 N.W.2d 611 (Iowa), opinion filed September 9, 1971; State v. Morrison, 183 N.W.2d 696, 698 (Iowa); State v. Myers, 158 N.W.2d 717, 720–722 (Iowa). See also 1 Underhill's Criminal Evidence, §§ 182–185 (5th ed.).

In light of the foregoing it is evident trial court did not err in overruling defendant's motion for a directed verdict.

■ III. As aforesaid the trial jury found defendant guilty. In addition, answers were given to the defendant-requested special interrogatories, discussed *infra*. See The Code 1971, Section 785.2; rule 206, Iowa R.Civ.P.; State v. Williams, 245 Iowa 494, 500, 62 N.W.2d 742, 745; State v. Strable, 228 Iowa 886, 890, 293 N.W. 441, 442; State v. McCarty, 210 Iowa 173, 174, 230 N.W. 379, 380. See also rule 205, Iowa R.Civ.P.; United States v. Diapulse Manufacturing Corp. of Amer., 389 F.2d 612, 614–615 (2d Cir.), cert. den. 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365; 1 Devitt and Blackmar, Federal Jury Practice and Instructions, §§ 6.01–6.09 (2d ed.); 44 F.R.D. 338; 38 F.R.D. 208. But see United States v. Spock, 416 F.2d 165, 180–183 (1st Cir.); Gray v. United States, 174 F.2d 919, 923–924 (8th

Cir.); State v. Philpott, 222 Iowa 1334, 1342–1343, 271 N.W. 617, 622; State v. Bock, 80 Idaho 296, 328 P.2d 1065, 1074; 53 Am.Jur., Trial, § 1066.

These are the defendant-requested interrogatories propounded, with jury answers given:

"1. Do you, under the evidence, and in accordance with these instructions, find that the defendant, Frank Propps, had any knowledge that David Greene was going to use his truck to commit larceny on the Hugh Webb farm north of Mitchellville on the evening of January 20, 1970 when the truck was borrowed from the defendant, Frank Propps? ANSWER: No.

"2. Do you, under the evidence, and in accordance with these instructions, find that the defendant, Frank Propps, participated, encouraged or countenanced the commission of the larceny of beans from the Hugh Webb farm on the early morning of January 21, 1970? ANSWER: Yes.

"3. Do you, under the evidence, and in accordance with these instructions, find that the defendant, Frank Propps, first had knowledge that beans were taken when he saw David Greene, James Colbert and Richard Scott at about 5:00 a. m. on the early morning of January 21, 1970? ANSWER: Yes."

IV. As stated in Tobin v. Van Orsdol, 241 Iowa 1331, 1338, 45 N.W.2d 239, 244:

"It is only when there is an irreconcilable conflict between the general verdict and the special finding that the latter controls. In Fischer v. Hawkeye Stages, 240 Iowa 1203, 1206, 37 N.W.2d 284, 287, many of our former opinions are reviewed and the opinion states this as the rule:

" 'It is settled both in Iowa and by the authorities generally that all reasonable presumptions are in favor of the general verdict. Nothing is presumed in aid of the special finding. If the general verdict thus aided is not in irreconcilable

conflict with the special finding the former must stand.' "

Although not approved as to form or content, we find no vitiating inconsistency between answers to the foregoing interrogatories, or between them and the general verdict.

Trial court, in overruling defendant's post-trial motion, said:

"1. * * * In Interrogatory No. 1 the jury was asked to determine whether the defendant had any knowledge that David Greene was going to use defendant's truck to commit larceny on the Hugh Webb farm on the evening of January 20, 1970, when the truck was borrowed from the defendant. The evidence submitted in the case points conclusively to the fact that the larceny, if any, was committed on January 21, 1970. The submission of this interrogatory presented the jury with a difficult choice. If they answered the question 'yes' their finding would be inconsistent with the evidence, under which they could only find that the larceny occurred on January 21, 1970. Also, the evidence clearly disclosed that on January 20, 1970, the defendant had no knowledge of the location of the beans (the subject of said larceny) which David Greene intended to take. Again the jury was confronted with a difficult question. If they answered the interrogatory 'yes' it was tantamount to a finding that the defendant had knowledge of the existence of the beans on the Hugh Webb farm, which clearly was not proven under any interpretation of the evidence. It is the conclusion of the Court that the jury's answer to Interrogatory No. 1 is not inconsistent with their general verdict of guilty.

"2. Interrogatory No. 3 required the jury to determine whether or not the defendant first had knowledge that the beans were taken when he saw David Greene, James Colbert and Richard Scott at about 5:00 a. m. on the morning of

January 21, 1970. The jury answered 'yes' to this interrogatory. There is no evidence that the defendant was present on the farm of Hugh Webb at the time David Greene and the others stole the beans and it would have been impossible for him to have knowledge that the beans were taken until David Greene, James Colbert and Richard Scott informed him that they had acquired the beans. The jury's answer to this interrogatory does not preclude the jury's finding that the defendant participated, encouraged or countenanced the commission of the larceny of the beans."

This court agrees with and hereby adopts the foregoing conclusions. By the same token interrogatory No. 2 presents no irreconcilable conflict.

We now hold, trial court did not err in overruling defendant's motions in arrest of judgment, and for a new trial.

Affirmed.

All Justices concur.